Next in No. 15-1862, Medtronic, Inc. v. Lifeport Sciences v. Medtronic, Inc. v. So in short, none of Ostrovsky's protrusions or ends of the flexible struts keep a permanent curve. And that's what the evidence showed. On appeal, your honors are correct. Medtronic seems to be focusing just on end 206. And I, myself, was going to point Judge Bryson to the very same part. It's at A295, column 9, lines 62 to 65, the part of the Ostrovsky record that says that the struts are flexible and the ends are part of the struts. So it's a pretty simple syllogism that the ends are flexible as well. And then there's also, there's more. In the absence of evidence saying otherwise. Exactly, Judge Toronto. And the type of contrary or cautionary evidence otherwise would be exactly what you would find in the patent under review itself, such as at column 6, basically the first three to five lines, talking about heat setting. Judge Bryson, I think you used the term tempering, which  couldn't say that exactly. Well, that's what I had in mind, even if it was wrong. But in any case, we have, back to Ostrovsky, we have column 10, lines 64 to 66. And that section underscores that the materials are elastic. They use the word elastic. So just to put on the table in front of everybody the entire record, we also have Ms. Gold's testimony. And Ms. Gold's testimony can be found at A390, paragraph 53. A superior expert actually in the field of the invention, unlike petitioner's expert. And I bring all that up, I put all that evidence on the table in front of us, supporting the conclusion reached by the board, because this is a substantial evidence appeal. What was it that Dr. Loomis had to say on this point? Because I think, if I recall, one of his declarations, I don't think we had in the appendix, but do you recall what it was that he had to say on this exact point? The most he said was that in the configurations depicted in figures 33 to 35, there's no depicted change in the curvature. Which, of course, for all the reasons discussed already, that doesn't get them where they need to be under the undisputed claim construction. So this is a substantial evidence appeal. It's well briefed. I'm not going to use up much of the panel's time. I just want to make two points, and of course, make myself available for questioning. Point number one, in this substantial evidence appeal, there is never any acknowledgment of the existence of the expert testimony from Ms. Gold's. No acknowledgment of the existence of the expert testimony supporting the board's decision. I, for one, do not understand how one presents a substantial evidence appeal to this court without at least coming up with some rationale for disregarding or debunking the expert testimony that does support the conclusion of the board. And then the second point that I'd like to make, and then I'll make myself available for questions and then have a seat, is, and maybe address one or two things they said. But as a remedy, what Medtronic seeks is a remand on the issue of obviousness, and particularly the obviousness theory that they present to this panel today. But at oral argument before the board, they repudiated the obviousness theory they are presenting to the panel today. Are you reading from or pointing to a portion of that transcript that's in our joint appendix or no? Yes. At A229, lines four to five, in their very quick presentation of the part of Ostrovsky, the item 202, item 206 in Ostrovsky that they presented to the board, they began that discussion by saying, quote, actually we are using it, namely Ostrovsky, meaning just to show the pointed tip. Just to show the pointed tip. That is exactly how they presented their obviousness theory in the petition A93, A99. The next paragraph of that transcript does shift to figures 33 to 35 and number 206 and says that Ostrovsky also teaches that in all those configurations, it also teaches a permanent curve. Agreed, Your Honor. They do discuss that. But once they get to that part of the discussion in the transcript, it's very much disembodied from what they presented in the claim charts in their petition, A93 to A99. And the claim charts in the petition there presuppose or make the argument that white is the reference that has the permanent curve. But by now, it's pretty clear and it's undisputed on appeal that white, the portion they show as having the permanent curve, ends up lying flat or perhaps even goes a little bit radially inward. Bottom line, it changes its curvature. So they've departed from the argument on appeal that they went into in their petition. So finally, just a quick collection of observations about what we heard during my brother's opening. I think the words he used right out of the gate were the board did no gram analysis of the most relevant part of the reference. Well, I would commend Your Honor's attention back to A93 to A99. Their petition did not contain any gram analysis of the part of the reference that they are highlighting today on appeal. Incidentally, if you read the board's decision, I believe it's A31 to 32, there is in fact exactly the gram analysis that one would do had they raised that in their petition, which is to say the board was searching for the existence of a claim feature in the prior art. That is the scope of the prior art that the board was seeking.  The next observation from my brother, he said that every possible configuration of Ostrovsky is shown in figures 33 to 35. I would commend Your Honor's attention to the red brief, page 48, where we summarize the evidence, really make the salient point that those figures do not show every possible configuration. On this point, they point to the section of the figure labeled B. They say it shows the forces of the blood flow. That's what you heard today, Your Honors, during oral argument. But contrary to what you heard, Your Honors, at column 9, line 31, B is the label for the direction of blood flow. It's not a force diagram. It's not designed to depict any sort of in vivo action of the forces of blood. It's simply a notation of what the direction of the blood flow would be. And as Your Honors are probably aware, blood doesn't flow with a uniform force or velocity or flux. Blood is something in the body that pumps. I think perhaps judicial notice could be taken that the heart pumps blood. And finally, the last point we heard was that Ostrovsky does suggest enough to a person of skill in the art to teach the permanent curve, because it teaches that you can change the thickness of a wire or change the thickness of a piece of material. I don't dispute that. There is discussion that the thickness of the material can be customized for the chosen amount of flexibility. That is what Ostrovsky says. But the salient point to make here is that if we're still focused on figures 33 to 35, the part that they really need to be rigid to make their argument that they're making today is the very thinnest part depicted in the figure. So necessarily, if you're customizing flexibility based on the thickness of a material, their argument actually works against them, and it proves the opposite of what they intend. Unless Your Honors have any further questions, I'll yield to my brother. Thank you. Thank you, Your Honor. If I could just clarify a couple of procedural things. One is that the reason that no mention was made of Ms. Gold's expert testimony was because she made no expert opinion on this issue. And if you look at her testimony at 390, you will see she didn't even reference the 206 as being flexible. She referenced 202 strut as being flexible material. But she made no analysis of 29 through 35. So it was nothing to discuss or rebut. With respect to whether or not this was in our petition, if the court would look at A70 to 71 and A92, in the original petition, we did discuss figures 34 and 33. And we also incorporated this discussion in the Ostrowski and White ground. So this was in our petition right from the beginning. I'm sorry, what were those citations, please? The citations for where it was in the petition would be at A70-71 and at A92. And Ms. Gold's paragraph that was referred to at A390 does not have a full discussion of this. And there was nothing to rebut on this issue. With respect to, again, the materials that we were referring to, I think your honor asked for some sites on that. And in the Ostrowski reference at A295 at column 10, line 60 to 65, they discussed the selection of materials will determine the flexibility and resiliency. And at column 6 to 12-14 lines at A293, it is, of course, understood that differences in thickness relative to width will affect the flexibility of the element. And what was just stated by counsel that it needs to be rigid at that point, it does not need to be rigid. This is the whole false premise in this appeal, is that that talon does not have to be rigid. It just has to maintain a fixed curve. But the rigidity of a material that starts out as elastic or flexible, as is depicted in the 662 patent as well, can take on a permanent curve in various configurations. Also, in- I'm not sure I understood that point. Are you saying that it needs to have a particular memory? No, it doesn't have to have a memory. Well, why don't you say again, if you want. What it's saying is that if we look at the definition that has been provided to us, I don't know if I have it handy. A preset curve. It's a preset curve, right? That has a fixed arc that's maintained in all of the configurations. What in astroscopy is missing? In those drawings, what is missing? There's nothing missing in that definition. Before that, you were saying, well, that- but I didn't understand what you were saying. But that doesn't require, and then you characterized what it doesn't require. It doesn't require that this be a rigid permanent in the sense of inflexible. Well, that I don't understand. But that's not the definition that was given by the board. The board didn't say. Well, what is the right definition then? If my understanding of a fixed curve is that it is indeed rigid, it's not going to change from that curve to any other shape. Are you saying that's not the correct definition, not the definition that was accepted? I don't believe that is. Well, what is then? Because the definition that was given in the claim construction just says it's a fixed arc. It doesn't say it's a fixed curve, Your Honor. Well, a fixed arc. So it's a place in the arc is fixed so that when you look at all the different configurations, there are no forces put on it that actually change it. And the reason for that, as was stated in the 662 patent, and it's true in astroscopy, is after it expands, you don't have to do anything with that talon, which intercepts the lumen, because it already has the curve. It's not something that you have to do. And the curve is not going to change. And the curve is not changing. But I would call that to be a permanent rigid curve, wouldn't you? But the claim doesn't call for rigid. The claim itself, Your Honor, does not have a material limitation in it. This heating step, for example, is a process step. And I guess I'd like to give, just in my last statement, I would like to reiterate what I was starting out to say, which is what the board actually did wrong here. If we look at pages 31 and 32 of the board's final written opinion, then what it states there, it only has three paragraphs of analysis. The first paragraph only simply states what our contention is about astroscopy, which is correct. But then it doesn't go on to analyze it. It jumps that step. It doesn't do a scope and content analysis of this prior art reference. It skips it. And it goes on and says, well, Dr. Loomis didn't tell us anything about a heating step to make this permanent. That's a reading into a limitation that just is a process limitation to an apparatus claim. Then it goes on to criticize Dr. Loomis because he didn't analyze all these other external forces. Can we imagine if every examiner that looks at a prior art reference. This is turning into a very long last statement. I'm sorry, Your Honor, but if it would, I would, if every examiner had to do that type of analysis every time it looked at a publication of a patent, that's not the way prior art is analyzed. Thank you, Your Honor.  The case is submitted.